# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

JOHN K. SHERWOOD (973) 645-4693
BANKRUPTCY JUDGE Fax: (973) 645-2606

**NOT FOR PUBLICATION**

August 4, 2015

> **FILED**
> JAMES J. WALDRON, CLERK
> **AUG. 4, 2015**
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
>
> BY: s/ *Ronnie Plasner*
> JUDICIAL ASSISTANT

Andy Winchell, Esq.
45 River Road, Suite 3
Summit, New Jersey 07901

Barbara K. Hager, Esq.
Reed Smith
1717 Arch Street
Suite 3100
Philadelphia, Pennsylvania 19103

Re: **Wiggins v. Hudson City Savings Bank et al.**
 **Adversary Proceeding No. 15-01938 (JKS)**

Dear Counsel:

This matter is before the Court upon the motion (the "Motion") of Hudson City Savings Bank ("Hudson City") and Wells Fargo Bank, N.A. ("Wells Fargo," together with Hudson City, collectively, the "Defendants") to dismiss the adversary complaint (the "Complaint") filed by Andre G. Wiggins and Sheila S. Bell-Wiggins (the "Debtors" or "Plaintiffs"). The Complaint seeks damages and injunctive relief for the Defendants' alleged violations of the automatic stay and Implementing Regulation X of the Real Estate Settlement Procedures Act ("RESPA"). *See*

Page 2
August 4, 2015

12 C.F.R. § 1024 (2014); 12 U.S.C. §§ 2601-17 (2012). For the reasons set forth below, the Court will grant the Defendants' Motion.

I.      **Factual and Procedural History**

On April 30, 2007, the Debtors received a mortgage loan (the "Loan") from Wachovia Mortgage (now known as Wells Fargo Bank, N.A) for the purchase of real property located at 812 Cleveland Avenue, Scotch Plains, New Jersey (the "Property"). (Compl. at ¶ 12, ECF No. 1). In exchange for the Loan, the Debtors executed a note and gave a mortgage on the Property to Wachovia Mortgage as security. The Loan was subsequently transferred (apparently to Hudson City) and Wells Fargo retained its role as servicer of the Loan. (*Id.* at ¶¶ 14-15).

On July 5, 2012, the Debtors filed a joint chapter 13 petition (the "Petition") and chapter 13 plan of reorganization (the "Plan"). (Chapter 13 Plan and Motions, Main Case, ECF No. 4). Schedule D of the Petition lists the value of the Property as $500,000, subject to Wells Fargo's first mortgage in the amount of $536,324 and a second mortgage held by Bank of America, NA in the amount of $136,000. In Part 4 of the Plan, which addresses the proposed treatment of secured claims, the Debtors list the Property in the section entitled "Surrender."[1] The Plan states that "[u]pon confirmation, the stay is terminated as to surrendered collateral. The Debtor surrenders the following collateral: [the Property]."[2] (*Id.* at 4). The Plan further states that the Property is "[s]urrendered in Full Satisfaction of all claims." (*Id.*). On August 30, 2012, Wells Fargo filed a motion for relief from the automatic stay with respect to the Property. On September 18, 2012, the Court entered an order confirming the Plan. (Main Case, ECF No. 18).

---

[1] Notably, the Debtors list the Property in this section as opposed to the sections entitled "Modification" or "Curing Default and Maintaining Payments."

[2] The Plan lists the Property in the column of Part 4 entitled "Collateral to be Surrendered."

An order granting Wells Fargo's motion to vacate the automatic stay was entered four days later. (Main Case, ECF No. 20).

In July 2013, the Debtors filed a modified plan, which was confirmed on September 17, 2013, and the Debtors filed a second amended plan on January 31, 2014, which was confirmed on March 18, 2014. Both of these plans included the same language with respect to the surrender of the Property as the treatment of the secured claim under the Plan. On March 17, 2014, just prior to the hearing on confirmation of the Debtors' second amended plan, Hudson City commenced a foreclosure action (the "Foreclosure Action") against the Property in the Superior Court of New Jersey, Chancery Division, Union County, Docket No. F-009769. While the Foreclosure Action was pending, the Debtors filed a third amended plan, which this Court confirmed on September 30, 2014. Like the Debtors' previously confirmed plans, the third amended plan provided that "the stay is terminated" as to the Property and the Property was "[s]urrendered in Full Satisfaction of all claims." (Main Case, ECF No. 83).

Despite the entry of four confirmed plans (the "Confirmed Plans") providing for the surrender of the Property, in early 2015 the Debtors apparently decided that they wanted to attempt to keep the Property by submitting an application for a loan modification (the "Loan Modification") to Wells Fargo. According to the Plaintiffs, they have "had a complete loan modification application pending" since February 2015, which they assert stays Wells Fargo from "commencing or advancing proceedings against the Debtor's home." (Compl. at ¶¶ 22-23).

On February 26, 2015, the Debtors received a letter (the "Denial Letter") indicating that they were not eligible for any loss mitigation programs because Wells Fargo did not "have the

Page 4
August 4, 2015

contractual authority to modify [the Debtors'] loan because of limitations in our servicing agreement" and because "[a]ny available mortgage assistance programs would conflict with the terms of your current bankruptcy plan or increase your payment." (*Id.*, Ex. A). About a week later, the Debtors received notice that a sheriff's sale of the Property had been scheduled. (*Id.* at ¶ 26). On April 21, 2015, the Debtors sent Wells Fargo a notice of error (the "Notice of Error") pursuant to 12 C.F.R. § 1024.35(b) asserting that Wells Fargo "failed to provide accurate information to a borrower for loss mitigation options and foreclosure, as required by the early intervention provisions of Sec. 1024.39." (*Id.*, Ex. C). The Defendants then adjourned the sheriff's sale.

On May 18, 2015, the Debtors filed the Complaint seeking damages and injunctive relief against the Defendants for alleged violations of the automatic stay and RESPA. Count One of the Complaint asserts that Hudson City knowingly violated the automatic stay by failing to obtain stay relief from this Court before initiating the Foreclosure Action and seeks actual and punitive damages pursuant to section 362(k) of the Bankruptcy Code. Count Two seeks entry of injunctive relief preventing the Defendants from continuing any foreclosure proceedings against the Property and related declaratory relief. Finally, Count Three asserts that the Defendants violated RESPA and Implementing Regulation X by continuing to pursue the foreclosure and sheriff's sale while the Loan Modification was pending and by failing to adequately respond to the Plaintiffs' Notice of Error. The Defendants filed the Motion to dismiss the complaint in its entirety on June 17, 2015. (Mot. to Dismiss Pls.' Adversary Compl., ECF No. 4).

Page 5
August 4, 2015

## II. Analysis

### A. Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, provides that a motion to dismiss may be granted if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. A complaint is sufficiently pled as long as it provides the opposing party with notice of claims against it and includes "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citations and quotations omitted). However, factual allegations "must be enough to raise the right to relief above the speculative level" and "should 'plausibly suggest[ ]' that the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is implausible in the context of a Rule 12(b)(6) motion to dismiss if its allegations "are too conclusory or the complaint fails to include essential facts about the elements of a claim." *In re Neale*, 440 B.R. 510, 518 (Bankr. W.D. Wis. 2010).

Page 6
August 4, 2015

### B.  11 U.S.C. § 362: Violation of the Automatic Stay

The Plaintiffs assert that Hudson City violated the automatic stay by commencing the Foreclosure Action without first obtaining an order from the Court specifically granting it stay relief with respect to the Property. Section 362(a) of the Bankruptcy Code stays:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title or to recover a claim against the debtor that arose before the commencement of the case under this title . . .
>
>     \*    \*    \*
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a)(1) and (6). It is well established that the automatic stay prevents the commencement or continuation of foreclosure proceedings against property of the bankruptcy estate. *See In re Littke*, 105 B.R. 905, 910 (Bankr. N.D. Ind. 1989). Willful violations of the automatic stay may render a defendant liable for actual or punitive damages and fees and costs pursuant to section 362(k). *See* 11 U.S.C. § 362(k) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."). "To succeed on a 'willful' stay-violation claim, the debtor must prove: (1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and, (3) the

Page 7
August 4, 2015

violation caused actual damages." *Linsenbach v. Wells Fargo Bank (In re Linsenbach),* 482 B.R. 522, 526 (Bankr. M.D. Pa. 2012).

The Plaintiffs assert that Hudson City is liable for intentionally violating the automatic stay because the only entity that obtained stay relief with respect to the Property was Wells Fargo. The Plaintiffs claim that the provisions of the Confirmed Plans and this Court's order granting Wells Fargo relief from the stay do not extend to any other party, including any successors or assigns, and assert that Hudson City was required to obtain an order from the Court granting it stay relief before taking any action with respect to the Property.

The Defendants argue that the automatic stay was not violated because Hudson City filed the Foreclosure Action after the Property had been surrendered and the stay was terminated pursuant to the first two Confirmed Plans. They further argue that the Plaintiffs should be estopped from asserting a stay violation claim since they obtained confirmation of four plans which expressly provided that the stay is terminated as to the Property, two of which were filed and confirmed by this Court subsequent to Hudson City's initiation of the Foreclosure Action in March 2014. The Court agrees with the Defendants.

Section 1325(a)(5) provides that surrendering encumbered collateral to a secured creditor is one of three ways that a debtor may treat a secured claim in a chapter 13 plan. *See* 11 U.S.C. § 1325(a)(5)(C) (providing that a chapter 13 plan shall be confirmed if "with respect to each allowed secured claim provided for by the plan . . . (C) the debtor surrenders the property securing such claim to such holder."). Although not defined in the Bankruptcy Code, "surrender" refers to the "act of a debtor surrendering collateral to a lienholder who then

Page 8
August 4, 2015

disposes of the property pursuant to the requirements of state law." *In re Behanna*, 381 B.R. 631, 640 (Bankr. W.D. Pa. 2008) (citing *In re Losak*, 375 B.R. 162, 164 (Bankr. W.D. Pa 2007); *see also Bank of New York Mellon v. Watt*, No. 3:14-CV-02051-AA, 2015 WL 1879680, at *4 (D. Or. Apr. 22, 2015) (defining "surrender" as "the debtor's relinquishment of his or her right to the property at issue, such that the secured creditor is free to accept or reject that collateral.") (citing *In re Rosa*, 495 B.R. 522, 523 (Bankr. D. Haw. 2013)).  Once collateral is surrendered pursuant to a confirmed plan, the collateral ceases to be property of the bankruptcy estate. *See In re Brown*, No. 12-51926-JPS, 2012 WL 6021469 at *4 (Bankr. M.D. Ga. Dec. 4, 2012) (noting, "surrender upon confirmation of a plan would terminate the estate's interest in the [collateral].").

Here, once the Plan was confirmed, the Property ceased to be property of the estate and the automatic stay provided for by section 362(a) was terminated with respect to the Property. *See* 11 U.S.C. § 362(c)(1) ("[T]he stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate.").

Moreover, the automatic stay did not apply to the Property following confirmation of the Plan because the Plan expressly provided that "the stay is terminated" as to the Property. Hudson City did not need to move for stay relief before filing the Foreclosure Action because the terms of the Plan, and each of the Confirmed Plans, provided the very relief that any such motion would have sought.  While the Plaintiffs emphasize that only Wells Fargo moved for stay relief and the order granting stay relief applied only to Wells Fargo and not its successors or assigns, they ignore the fact that the language of the Confirmed Plans terminating the stay is not specific

Page 9
August 4, 2015

to Wells Fargo but applies to the Property itself.[3] Requiring Hudson City to move for an order granting relief from the stay would render the terms of the Confirmed Plans meaningless. Hudson City was justified in relying on the confirmation orders, which have the effect of res judicata. *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."); *Ruskin v. DaimlerChrysler Servs. N. Amer., L.L.C. (In re Adkins),* 425 F.3d 296, 302 (6th Cir. 2005) ("[C]onfirmation of a plan has been described as 'res judicata of all issues that could or should have been litigated at the confirmation hearing.'") (internal citations omitted); *Woltman v. PNC Bank (In re Woltman),* 2008 WL 5157477 at *2 (Bankr. M.D. Pa. Nov. 18, 2008) ("Although this provision typically is employed as a shield by a debtor to bar a creditor from taking action against the debtor in contravention of the terms of a confirmed plan, a debtor is equally bound by the confirmation order."). Thus, once the Debtors indicated that they were surrendering the Property, they were bound by the confirmation order.

Moreover, if the Debtors believed the commencement of the Foreclosure Action in March 2014 was inconsistent with the Confirmed Plans or otherwise violated their rights, they could have contested the foreclosure complaint or sought bankruptcy court intervention at that point. Instead, while the Foreclosure Action was pending, the Debtors sought and obtained two modified confirmation orders that reiterated their desire to surrender the Property in full

---

[3] The Plaintiffs argue that the Confirmed Plans surrendered the Property only to Wells Fargo, apparently reasoning from the fact that Wells Fargo is listed as the creditor having the claim on the collateral means that the stay was only terminated only to Wells Fargo. However, the language of the Confirmed Plans reads: "Upon Confirmation, the stay is terminated as to surrendered collateral."

Page 10
August 4, 2015

satisfaction of all claims and provided that the stay was terminated with respect to the Property. Indeed, the inconsistency with the Debtors' position is even more apparent in light of the fact that, on June 19, 2015, after the instant adversary Complaint was filed, the Debtors filed yet another modified plan, which includes the same surrender language as the previous four Confirmed Plans. (*See* Main Case, ECF No. 104).

Thus, the Court finds that the Complaint fails to state a claim for relief for a violation of the automatic stay under section 362(k).[4]  Accordingly, Counts One and Two of the Complaint are dismissed.

### C.    12 C.F.R. § 1024: Implementing Regulation X of the Real Estate Settlement Procedures Act

The RESPA claims in Count Three of the Complaint allege that the Defendants: (i) violated 12 C.F.R. § 1024.41(g) by improperly continuing to pursue foreclosure on the Property after receiving the Loan Modification; and (ii) failed to properly respond to the Notice of Error submitted by the Debtors following the denial of the Loan Modification as required by 12 C.F.R. § 1024.35(g).  Because the Property ceased to be property of the estate following its surrender pursuant to the Plan, the Court probably does not have core jurisdiction over the RESPA claims. At best, the Court has "related to" jurisdiction over the Debtors' claims in Count Three of the Complaint pursuant to 28 U.S.C. § 1334(b).  Accordingly, the following constitutes the Court's proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).

---

[4] Although the Debtors argued at oral argument that dismissal on the pleadings is inappropriate because no documentation of a valid assignment from Wells Fargo to Hudson City has been produced, the Complaint does not assert a claim for relief based on an alleged improper assignment by Wells Fargo to Hudson City.  The absence of this documentation is immaterial to the stay relief claim because, as discussed, the Confirmed Plans terminated the stay as to the Property and not as to a particular creditor.

Page 11
August 4, 2015

### i.        12 C.F.R. § 1024.41(g)

The Debtors assert that the Defendants violated 12 C.F.R. § 1024.41(g) by refusing to cancel a scheduled sheriff's sale of the Property after receiving the Loan Modification in early February 2015. Section 1024.41(g) provides:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g). The Defendants state that they provided the Debtors with the notice required by § 1024.41(c)(1)(ii) when they sent the Denial Letter to the Debtors on February 26, 2015 informing them that they were not eligible for any loss mitigation options. Section 1024.41(c)(1) provides:

> If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:

Page 12
August 4, 2015

    (i)    Evaluate the borrower for all loss mitigation options available to the borrower; and

    (ii)    Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41. Pursuant to 12 C.F.R. § 1024.41(h), a borrower seeking to challenge a servicer's evaluation of its loss mitigation application is entitled to appeal the decision. *See id.* § 1024.41(h)(1).

The Denial Letter informed the Debtors that they did not meet the requirements of the "Loan Modification" program or "Cap to Reinstate" program because "[w]e do not have the contractual authority to modify your loan because of limitations in our servicing agreement." (Compl., Ex. A). The Denial Letter states that the Debtors did not meet the requirements of the "Repayment Plan" program because "[a]ny available mortgage assistance programs would conflict with the terms of your current bankruptcy plan or increase your payment." (*Id.*). The Debtors assert that Wells Fargo violated section 1024.41(c)(1)(ii) by continuing to proceed with the foreclosure process while attempting to avoid the "legal obligation to review the [Plaintiffs'] loan modification application by using a boilerplate response that it did not have contractual

Page 13
August 4, 2015

authority to modify the [Plaintiffs'] mortgage loan." (Pls.' Opp'n to Mot. to Dismiss at ¶7, ECF No. 5).

The Court finds that the Denial Letter satisfied the requirements of section 1024.41(c)(1)(ii) because it constituted "a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage." 12 C.F.R. § 1024.41(c)(1)(ii). Because Wells Fargo evaluated the Loan Modification and issued the Denial Letter within 30 days of receiving it from the Debtors and the Debtors never requested an appeal of the denial, the prohibition against scheduling a foreclosure sale under 12 C.F.R. § 1024.41(g) did not apply. Accordingly, the Plaintiffs' claim for a violation of section 1024.41(g) should be dismissed.

      **ii.**      **12 C.F.R. § 1024.35(b)**

Rather than filing an appeal of the February 26, 2015 Denial Letter, the Debtors sent Wells Fargo a Notice of Error pursuant to 12 C.F.R. § 1024.35 on April 21, 2015.[5] This section of RESPA requires mortgage servicers to respond to a properly submitted notice of error by correcting the error or conducting an investigation into the error and providing a written

---

[5] 12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

Page 14
August 4, 2015

notification that no error occurred. *See id*. § 1024.35(e). Section 1024.35(b) states, "[f]or the purposes of this section, the term 'error' refers to the following categories of covered errors:"

> (1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.
>
> (2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.
>
> (3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).
>
> (4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).
>
> (5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.
>
> (6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).
>
> (7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.
>
> (8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.
>
> (9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).
>
> (10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

Page 15
August 4, 2015

>   (11) Any other error relating to the servicing of a borrower's mortgage loan.

*Id*. § 1024.35.  Citing subsection (7), the Notice of Error submitted by the Debtors asserts that Wells Fargo "failed to provide accurate information to a borrower for loss mitigation options and foreclosure, as required by the early intervention provisions of § 1024.39." (Compl., Ex. C).

The claim that the Defendants violated this section of RESPA by failing to properly respond to the Notice of Error fails for at least two reasons.  First, the Notice of Error asserts that Wells Fargo failed to provide accurate information about loss mitigation options "as required by the early intervention provisions of § 1024.39." (*Id.*).  The early intervention procedures require servicers to make good faith efforts to communicate with a delinquent borrower to inform the borrower about potential loss mitigation options.  However, servicers are expressly exempted from complying with the early intervention provisions when the borrower is a debtor in bankruptcy.  *See* 12 C.F.R. § 1024.39(d) ("A servicer is exempt from the requirements of this section for a mortgage loan while the borrower is a debtor in bankruptcy under Title 11 of the United States Code.").  Thus, even if Wells Fargo failed to provide accurate information under subsection (7), it was exempt from having to comply with the early intervention provisions by virtue of the fact that the Debtors were in bankruptcy when they submitted the Loan Modification.

Second, while the Notice of Error claims that the Debtors were not provided accurate information regarding their loss mitigation options, it appears that the Debtors really sought to challenge the substance of Wells Fargo's determination that they did not qualify for a loss mitigation program.  Whether the denial was correct or incorrect, the Debtors received notice

Page 16
August 4, 2015

that their Loan Modification was denied. If this determination was incorrect, the Debtors' remedy was to challenge it by invoking the appeals process of § 1024.41(h) and not the error resolution procedures of § 1024.35(b) (which, as is evident from the enumerated list of covered errors, deals primarily with mistakes involving the servicing of a loan, such as a failure to credit a payment or the improper imposition of a fee). Indeed, the legislative history indicates that Congress considered permitting borrowers to file a notice of error challenging the correctness of a servicer's loss mitigation decision, but ultimately determined that "[t]he appeals process set forth in § 1024.41(h) provides an effective procedural means for borrowers to address issues relating to a servicer's evaluation of a borrower for a loan modification program. For this reason . . . the Bureau declines to add a servicer's failure to correctly evaluate a borrower for a loss mitigation option as a covered error in the final rule." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10744 (Feb. 14, 2013). Thus, regardless of whether Wells Fargo's reason for denying the Loan Modification was valid, the Debtors' filing of a Notice of Error was not the proper method to challenge to this decision.

Accordingly, Count Three of the Complaint should be dismissed for failure to state a claim for relief.

Page 17
August 4, 2015

### III. Conclusion

The Debtors' Complaint fails to state a claim for relief under the provisions of the Bankruptcy Code and RESPA and the Complaint is dismissed in its entirety. An Order in conformance with this Opinion will be entered.

Very truly yours,

s/ *John K. Sherwood*

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE